**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| **EDDUARD PRINCE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-1227** |
| **v.** | * | |
| | * | |
| **IVAN BATES, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * *

# MEMORANDUM OPINION

Self-represented plaintiff Edduard Prince ("Plaintiff"), proceeding *in forma pauperis*, initiated this civil action under 42 U.S.C. § 1983 against Ivan Bates ("State's Attorney Bates"), the State's Attorney for Baltimore, Maryland; and Brandon M. Scott ("Mayor Scott"), the Mayor of Baltimore, Maryland (collectively, "Defendants"). Plaintiff sues State's Attorney Bates and Mayor Scott both in their individual capacities and in their official capacities for "prospective relief only." ECF No. 14 at 1.

This matter is before the Court on Plaintiff's Motion for Leave to File First Amended Complaint and Defendants' Motions to Dismiss. ECF Nos. 8, 13, 14, 17. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court will grant Plaintiff's Motion for Leave to File First Amended Complaint, grant Mayor Scott's second Motion to Dismiss, and dismiss the Amended Complaint without prejudice.

## I. BACKGROUND

The following facts are drawn from Plaintiff's proposed Amended Complaint. *See* ECF No. 14-1 ("Am. Compl."). Plaintiff boarded the Baltimore Light Rail on July 11, 2023. Am. Compl. ¶ 7. After the train departed, Officer Green, a Maryland Transit Administration ("MTA") police officer, demanded proof that Plaintiff had paid the required fare. *Id.* ¶ 8. Plaintiff alleges that the officer did not observe him board the train. *Id.* ¶ 10. Plaintiff subsequently received a citation. He alleges that he was "prosecuted in citation court without a prosecutor present" where the judge "acted as both adversary and fact-finder." *Id.* ¶¶ 13–14. Plaintiff further alleges that the court disregarded exculpatory video evidence, failed to apply controlling Supreme Court of Maryland precedent, and ultimately imposed a $192 fine for an alleged failure to pay a two-dollar fare. *Id.* ¶¶ 15–17.

Plaintiff filed this action under 42 U.S.C. § 1983, alleging violations of the Fourth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the Excessive Fines Clause of the Eighth Amendment. *Id.* ¶¶ 32–42. He seeks compensatory and punitive damages, declaratory relief, and injunctive relief. *Id.* at 6.

On February 19, 2026, State's Attorney Bates moved to dismiss the Complaint, and Plaintiff filed an opposition. *See* ECF Nos. 8, 10. On March 2, 2026, Mayor Scott likewise moved to dismiss. *See* ECF No. 13. That same day, Plaintiff filed a Motion for Leave to File an Amended Complaint. *See* ECF No. 14.

On March 10, 2026, Mayor Scott filed both an opposition to Plaintiff's motion for leave to amend and a renewed motion to dismiss directed at the proposed Amended Complaint. *See* ECF Nos. 16, 17. Plaintiff replied in support of his motion for leave to amend and opposed Mayor

Scott's renewed motion to dismiss. *See* ECF No. 19. Mayor Scott thereafter filed a reply in further support of his motion to dismiss. *See* ECF No. 20.

## II. MOTION FOR LEAVE TO AMEND

Plaintiff's motion for leave to amend his pleading shall be granted.

Rule 15 of the Federal Rules of Civil Procedure governs amendment of pleadings in federal court. Rule 15(a)(1) states that "[a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B), if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a [Rule 12 motion], whichever is earlier." Fed. R. Civ. P. 15(a)(1). After that window, Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, "[t]he court should freely give leave when justice so requires." Accordingly, the Fourth Circuit endorses a liberal approach to granting motions for leave to amend. The court has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation modified).

Here, State's Attorney Bates does not oppose Plaintiff's motion for leave to amend. Although Mayor Scott opposes the motion, he contemporaneously moves to dismiss the proposed Amended Complaint, raising substantially the same arguments. *See* ECF Nos. 16, 17.

The Court finds that Plaintiff's Amended Complaint is substantially similar to his original Complaint, and permitting the amendment will not prejudice either defendant. Moreover, the issues raised Mayor Scott's opposition—including whether the Amended Complaint states a claim upon which relief can be granted—are more appropriately resolved on a motion-to-dismiss

standard under Rule 12(b)(6) than a motion-to-amend standard under Rule 15. Mindful of the liberal amendment policy embodied in Rule 15 and the liberal construction afforded to *pro se* pleadings, *see, e.g.*, *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022), the Court concludes that granting leave to amend is appropriate, so that the sufficiency of the amended pleading may be tested under the proper standard. Therefore, leave to amend is granted, and Plaintiff's proposed Amended Complaint is accepted as his operative pleading.

## III. MOTION TO DISMISS

Although the Court finds it proper to grant Plaintiff leave to amend, the Court also finds the Amended Complaint must be dismissed for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(i).

### A. Standard of Review

Under Rule 12(b)(6), a party may seek dismissal of a civil complaint for "failure to state a claim upon which relief can be granted[.]" To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, in cases where a plaintiff proceeds in forma pauperis, a district court "shall dismiss the case" if it determines that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

A plaintiff states a facially plausible claim when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation

to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While a complaint need not include "detailed factual allegations," it must contain factual allegations sufficient "to raise a right to relief above the speculative level[.]" *Id.* (citation omitted). "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Because "motion[s] to dismiss test[] the sufficiency of a complaint," courts assessing such motions are "generally limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). But a court may also "consider documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss so long as they are "integral to the complaint and authentic." *Id.* at 164 (citations omitted). Additionally, "a court may properly take

judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (citation omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Courts must construe *pro se* pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021); *see also Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022). "[L]iberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a civil complaint by a self-represented plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted) (quoting *King*, 825 F.3d at 214).

**B. Mayor Scott**

In his Amended Complaint, Plaintiff asserts five claims against Mayor Scott under 42 U.S.C. § 1983. Specifically, Plaintiff alleges an unlawful seizure in violation of the Fourth Amendment (Count I); a denial of procedural due process based on the alleged absence of a prosecutor during the citation proceeding (Count II); an excessive fine in violation of the Eighth Amendment (Count III); an equal protection violation based on allegedly discriminatory fare-enforcement practices (Count IV); and supervisory liability (Count V). *See* Am. Compl. at 5–6. Plaintiff's § 1983 claims against Mayor Scott must be dismissed because Plaintiff does not allege that he personally participated in or caused any alleged constitutional violation.

Title 42, United States Code, Section 1983 imposes liability on any "person" who, under the color of state law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution." "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."). As the Fourth Circuit has explained:

> To establish personal liability under § 1983, . . . the plaintiff must "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). That is, the official's "own individual actions" must have "violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). Put differently, liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (dismissing claim for willful denial of medical care when plaintiff was unable to show that the official charged acted personally in the deprivation of rights); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) ("[L]iability is personal, based upon each defendant's own constitutional violations.").

Plaintiff's Amended Complaint falls short of this requirement. Plaintiff does not allege that Mayor Scott participated in the challenged fare enforcement, directed Officer Green to demand proof of payment, approved or ratified Plaintiff's citation, participated in any court proceeding

arising from the citation, or had any involvement in the assessment of the challenged fine.[1] Although Plaintiff alleges in support of his equal protection claim that fare-enforcement practices disproportionately affect black residents and neighborhoods, Am. Compl. ¶ 25, he pleads no facts connecting Mayor Scott to those practices or suggesting that the Mayor acted with discriminatory intent. *See Martin v. Duffy*, 858 F.3d 239, 252 (4th Cir. 2017) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.") (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Conclusory allegations of discriminatory enforcement, without factual allegations linking Mayor Scott to the challenged conduct, are insufficient to state a plausible equal protection claim against him.

To the extent Plaintiff seeks to hold Mayor Scott liable based solely on his position as Mayor, the doctrine of *respondeat superior* generally does not apply to claims brought under § 1983. *See Iqbal*, 556 U.S. at 676; *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, a plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that

---

[1] Moreover, it is apparent that Mayor Scott has no supervisory authority over the MTA police nor any role to play in "citation court." The Baltimore Light Rail is owned and operated by the State of Maryland through the MTA, and Plaintiff does not dispute that the MTA Police is a state—not municipal—law enforcement agency. *See* Md. Code Ann., Transp. §§ 7-201, 7-203.1(b), 7-207. Plaintiff's conclusory allegation that the Mayor's Office "maintains formal and informal enforcement partnerships, data-sharing agreements, logistical coordination, and joint resource allocations with MTA, making the City a contributing and enabling actor in the fare-enforcement practices that resulted in Plaintiff's constitutional injuries" does not alter this conclusion. Am. Compl. ¶ 24. Plaintiff alleges no facts describing the nature of any such partnership, identifying any agreement or policy, or showing that Mayor Scott directed or had authority over the fare-enforcement actions at issue. At most, the allegation suggests cooperation between state and local entities. But generalized intergovernmental coordination cannot establish Mayor Scott's personal liability for the alleged constitutional violations.

was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Plaintiff's formulaic and conclusory allegations that Mayor Scott "had actual or constructive knowledge of unconstitutional practices[,]" "acted with deliberate indifference[,]" and "caused Plaintiff's constitutional injuries[,]" Am. Compl. ¶¶ 40–42, are unsupported by any facts, fall short of identifying what Mayor Scott did or failed to do, and cannot support a plausible supervisory liability claim. The Amended Complaint does not include any facts to suggest that Mayor Scott had knowledge of any specific subordinate's misconduct, that he failed to take action in response to being notified of any such misconduct, or that he otherwise caused any constitutional injury. Therefore, Plaintiff's supervisory liability allegations against Mayor Scott in Count V fail to state any plausible claim.

In sum, because the Amended Complaint alleges no facts showing that Mayor Scott personally participated in, directed, or caused any of the alleged constitutional violations, Plaintiff fails to state a plausible § 1983 claim against him. Accordingly, Mayor Scott's Motion to Dismiss is granted.

**C. State's Attorney Bates**

Plaintiff's claims against State's Attorney Bates are likewise subject to dismissal. Although State's Attorney Bates has not moved to dismiss the Amended Complaint, the Court finds the counts asserted against him inadequate to state a claim and therefore dismisses those counts *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).

First, to the extent Plaintiff seeks damages arising from conduct undertaken by State's Attorney Bates in his capacity as State's Attorney for Baltimore, those claims are barred by prosecutorial immunity. Maryland State's Attorneys enjoy absolute immunity when performing prosecutorial functions. *See Imbler v. Pachtman*, 424 U.S. 409, 422–23 (1976); *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018). Prosecutors are immune from suits for damages arising from activities "intimately associated with the judicial phase of the criminal process." *Nero*, 890 F.3d at 117–18 (quoting *Imbler*, 424 U.S. 430–31). Therefore, any claim seeking damages based on State's Attorney Bates's performance of prosecutorial functions is barred.

More fundamentally, the Amended Complaint includes no facts to suggest that State's Attorney Bates personally committed, caused, or participated in any constitutional violation Plaintiff alleges. See *Williamson*, 912 F.3d at 171 ("To establish personal liability under § 1983, . . . the plaintiff must 'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'") (citation omitted); *Trulock*, 275 F.3d at 402 ("[L]iability is personal, based upon each defendant's own constitutional violations.").

Maryland law makes it unlawful to ride the Baltimore Light Rail without paying the required fare or possessing proof of payment. Md. Code Ann., Transp. § 7-705(a). The MTA Police are responsible for enforcing those provisions and issuing citations. *See id.* §§ 7-207, 7-704.1. Persons receiving citations may contest them in the District Court of Maryland pursuant to the statutory procedures established by the General Assembly. Nothing in this statutory framework assigns any role to the State's Attorney of Baltimore in issuing citations, administering citation proceedings, or assessing civil penalties.[2] Consistent with that framework, the Amended

[2] Bates raised the foregoing argument in his motion to dismiss the initial Complaint, to which Plaintiff responded before filing his Amended Complaint. *See* ECF Nos. 8, 10. Plaintiff's Amended

Complaint alleges no facts to show or suggest that State's Attorney Bates directed the fare inspection, supervised the MTA Police, participated in Plaintiff's citation hearing, established or administered the challenged citation procedures, or exercised any authority over the adjudication of fare citations in the District Court of Maryland. Indeed, Plaintiff alleges that no prosecutor was present at his hearing, which undermines any inference that State's Attorney Bates personally participated in the alleged deprivation of Plaintiff's constitutional rights. Plaintiff's conclusory assertion that State's Attorney Bates is responsible for the challenged citation process is insufficient to state a claim under § 1983.

Nor does Plaintiff state a plausible equal protection claim against State's Attorney Bates. Although Plaintiff alleges that fare-enforcement practices disproportionately affect black passengers, disparate impact alone does not establish an equal protection violation. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977); *United States v. Romero*, 819 F. App'x 150, 153 (4th Cir. 2020); *Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.*, 535 F. Supp. 3d 393, 414 (D. Md. 2021). Rather, a plaintiff must establish that the defendant acted with discriminatory purpose and intent. *See Martin*, 858 F.3d at 252. The Amended Complaint contains no factual allegations suggesting that State's Attorney Bates adopted, enforced, or directed any policy motivated by racial animus, or took any intentional action to discriminate against Plaintiff or any protected class. Accordingly, Plaintiff fails to state an equal protection claim against State's Attorney Bates.

---

Complaint is substantially similar to his original Complaint, and the Court therefore considers the parties' prior briefing applicable here. In opposition, Plaintiff argued that Bates is "responsible for citywide enforcement policies" and "coordinate[s]" the "citation court" in conjunction with the MTA and the Mayor. ECF No. 10 at 7. But Plaintiff identifies no statute, regulation, or policy to show that Bates exercised authority over MTA fare enforcement, directed the issuance of Plaintiff's citation, or controlled the adjudication of fare citations in the District Court of Maryland. And he pleads no factual allegations to suggest that Bates otherwise personally participated in any of these matters.

Finally, Plaintiff's supervisory liability claim against State's Attorney Bates in Count V must be dismissed for the same reasons as the claim against Mayor Scott, as explained in Part III.B *supra*.

For each of foregoing reasons, Plaintiff's claims against State's Attorney Bates fail as a matter of law and must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**D. Declaratory and Injunctive Relief**

In Count VI, Plaintiff asserts a claim for prospective injunctive and declaratory relief, although it is unclear what specific relief he seeks against which defendant. In any event Plaintiff's claim for prospective relief fails. "Under *Ex parte Young*, private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *aff'd*, 589 U.S. 248 (2020). This doctrine applies only "where a party 'defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional' has 'some connection with the enforcement of the act.'" *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (citations omitted). As discussed in Parts III.B and III.C *supra*, the Amended Complaint contains no factual allegations establishing that either defendant exercises authority over the MTA Police, the issuance of fare-evasion citations, or the procedures employed by the District Court of Maryland in adjudicating such citations. Nor does Plaintiff allege facts demonstrating that either defendant is presently committing an ongoing violation of federal law that could be remedied through prospective relief. Accordingly, Plaintiff's claim for prospective injunctive and declaratory relief must be dismissed.[3]

[3] To the extent Plaintiff intends to assert a municipal liability claim through his official-capacity claims against Mayor Scott, that claim also fails. A viable claim for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), requires a plaintiff to allege that: "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Amend (ECF No. 14) is GRANTED; State's Attorney Bates's Motion to Dismiss (ECF No. 8) is DENIED as moot; Mayor Scott's first Motion to Dismiss (ECF No. 13) is DENIED as moot; Mayor Scott's second Motion to Dismiss (ECF No. 17) is GRANTED; and the Amended Complaint is DISMISSED without prejudice. The Court shall issue a separate Order consistent with this Memorandum Opinion.

September 10, 2026
Date

Matthew J. Maddox
United States District Judge

a violation of the plaintiff's constitutional rights." *Green v. Obsu*, Civ. No. ELH-19-2068, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020) (citations omitted). Here, Plaintiff (1) fails to identify any express municipal policy that plausibly caused the constitutional injuries alleged in this case, (2) fails to identify any decision either Defendant made that caused the alleged injuries, (3) fails to allege facts sufficient to support a reasonable inference that either Defendant was aware of any deficiency in training of subordinates and demonstrated deliberate indifference to that deficiency, and (4) fails to provide enough facts to suggest the existence of any "persistent and widespread" practice that caused the alleged constitutional injuries. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Isolated incidents of alleged misconduct by individual government employees are insufficient to establish an unconstitutional custom or practice. *See Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984); *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). Moreover, where a plaintiff, as here, fails to plead facts sufficient to demonstrate that any individual violated their federal rights, "there is no basis for *Monell* liability." *Wilson v. Town of Mount Jackson*, No. 5:21-CV-00055, 2022 WL 819531, at *15 (W.D. Va. Mar. 17, 2022). Therefore, any *Monell* claim asserted in the Amended Complaint fails.